9-1636 Harold Thomas v. J.R. Newark. Good afternoon. We're waiting for, do you know other council? Your plaintiff's council, correct? Yeah. Okay. So I was just going to introduce myself. Good afternoon. You're Appley. Christoph Prick. Okay. On behalf of defendant, Dr. Newmark. All right. Good afternoon, Justices. You'll need to speak up, sir, because that's not an amplifier. Good afternoon, Justices. Good afternoon. My name is Robert Holstein. I'm pleased to have the opportunity to address you. May it please the Court and my fellow council. All right, Mr. Holstein, you'll have 15 minutes to present your argument. We've read the briefs, so keep that in mind. Your Honor, I feel strongly about the issue of fair play and gamesmanship. I've practiced a number of years, as I know the Court has as well. I know that the Court has been in the trenches and knows what it is to litigate and that the Court also knows how things have developed in our society and in our culture that has affected the lawyers and the way in which lawyers practice their profession insofar as the trial, at least in the area that I know and I know the Court does as well, civil litigation. Well, let me ask you this, Mr. Holstein. Regarding the corollaries to the expert opinions on behalf of the defendant, they disclosed their opinions to you in writing under Supreme Court Rule 213, is it? Is that the rule that applies? 213? Yes, Your Honor. Okay, and then it's a recognized rule. It is recognized that the opinion that's disclosed in the 213 disclosure can be expanded on during the course of a deposition. Your Honor, of course. And that's what counsel did in this case. That's what the trial judge said counsel did in this case. And, of course, you're contending that that didn't happen. But why didn't it happen? It's not a question of it happening. It's a question of when it happens. We have a rule, a Supreme Court rule, a written rule, that says that such opinions must be produced within 60 days of a trial. Did you get an opinion produced within 60 days of trial? No, of course not. Well, my understanding is that you did get the opinion disclosed. No, sir. But the deposition went forward within that time frame. Your Honor, I'm December the 18th, Judge. All right, December 18th. Your Honor, you're a justice, and I apologize for that. It's okay. Your Honor, the trial was set for January 26th was the trial date. The opinions in writing, I'm sorry, Judge. Sorry? No, please, ask me a question. I'm trying to help you. I know you are. You didn't take the depositions of their controlled expert witnesses. That's where they have the ability to expand upon their opinions. Now, if you feel that those opinions were not disclosed to you, you have to deal with the Sullivan case. Are you familiar with the Sullivan case and the six factors? Because that's what the law is, Sullivan v. Edwards Hospital. 209 Illinois 2nd, 109. I didn't see it in your brief. But that's the case that controls. There are six factors that you have to deal with. I didn't see any of that. You see, if you want to bar somebody or you feel that there's a violation of 213, those are the factors that you go through with the court when you want to object to them, you see. And I didn't see any of that at all. Your Honor, I can't speak to that. What I can speak to is what occurred and what the trial judge agreed with me in a post-trial motion. And I'd like, again, to return to the argument. But to answer the question, there's a rule that says 60 days. This case was set for trial on January 26, 2009, and the disclosure of expert witnesses was by the defendant on December 18, 2008. The disclosures, which I had been requesting by motion, when they came in, they clearly met the disclosures of the plaintiffs. We, my experts said that this gentleman, because he was of his age, was 73 years old. At the time, he got ten needle sticks for prostate. He got on the table and afterwards sat up. The doctor recognized he was not totally cognizant. He was dizzy. Said he had to go to the bathroom. The doctor felt so much against it because he has a five-minute rule. He won't let anybody walk. But this was two or three minutes, according to the evidence, that he escorted him to the washroom. There was no issue other than he was suffering from dizziness as a result of his posture and the time that he was lying down. There was no question of an orthostatic interface which came from his sitting on the toilet and rising. It was not mentioned, orthostatic syncope was not mentioned in their reports. Less than 60 days before. Now, there were two of their experts. The reason I couldn't go to the first one's deposition but intended to do it by telephone was because of the late notice. It was noticed by the defendant. The morning of the deposition, which was on a Friday afternoon, and I had other business, other law business and other cases pending for that time period, I went in on an emergency motion before Judge Maddox to bar their expert opinions because they had come in. The ones that were sealing bagging me, I didn't know it at the time, the ones that had come in within 60 days of the trial. The judge said, no, we'll go ahead with it. I ordered, I attempted that afternoon to reach the deposition room where I could be on the telephone. But it didn't matter that I was there. They were going to disclose their opinions, expand on them, and give a totally different opinion than was in their 213s that were already late. What difference would it have made if I had been there? I got the transcript. I rushed it. I had a daily copy. And by Monday or Tuesday of the following week, I had their transcript. I knew exactly what they were going to say. That's the point. I then – You know, you say you knew what they were going to say. I knew because I saw it. I saw the transcript. I knew exactly what they were going to testify to. I knew at that point that they had expanded their 213s. There was no question about that. The second deposition, I went to the deposition. I was there, and the second expert gave the same theory of how this occurred as the first one. I then went in on another motion. That motion was deferred. I went in again to bar those experts. Or in the alternative, I asked Judge Max to – well, first I asked him to bar, and then he referred that to the trial judge again, a second time, for failure to properly and fully disclose their opinions. And then when the trial court denied the motion to bar, I then moved to admit supplemental opinions of my expert neurologist, Dr. Margulies, to meet the orthostatic theory. It could easily have been met because this plaintiff had been, two years before this occurrence, had been given an electoral examination at the same hospital where he was taken paralyzed after this occurrence, and they determined that he had nerve damage in his lower extremities. The nerve damage was such, I mean, vascular damage, that his arteries in his lower extremities were so narrowed that the blood wouldn't flow very quickly in them. That means that the recovery time when you're in an odd position, lying on a table in a fetal position, means that the recovery of the blood supply to the brain is going to take a lot more time than would somebody without that condition. We had a supplemental, we had a response, but the trial judge wouldn't let me offer it. Yeah, but here's the problem. Listen to me. The judge denied your motion and limited it, all right? Then at trial, right before the man testified, the law says you've got to renew it, and you didn't renew it. What I renewed was, when I went, I asked the judge to allow my experts to respond. No, no, I'm only trying to tell you what the law is. The law is that you have to renew that motion and limit it because you waive it unless you renew it, and you didn't renew it. I made it before the trial. That's not sufficient. You have to object at trial. At trial, you have to object. Otherwise, you're waiting, and that's what happened. There's no more for me to do.  You have to object at trial. Well, a motion in limited, you must object again at trial, and when you don't, you waive it. That's what the law is. It may be a severe thing, but it's the law. Look, it's one thing, judge, and I don't mean to cut you off. It's one thing to offer a motion in limited. It's also another thing to ask for the opportunity to rebut evidence that is new evidence that just came in within 10 days of a trial. That's when the depositions of their own experts were taken. You have to use the six factors in the Sullivan case, which you didn't do. Well, I may not, I don't know exactly what they are, but I wouldn't be surprised. That's the unfortunate part. I wouldn't be surprised that if the facts in this case support the Sullivan, a positive reading of the Sullivan case, and that we were sandbagged, there was no question about it. Like the judge agreed, he said he agreed that there was gamesmanship in our post-trial motion. I have a transcript of it. He said, primarily, from time immemorial, there has been some gamesmanship in trials, but I agree with plaintiff's counsel that perhaps there is too much nowadays. I don't believe that was the case here. Where does gamesmanship, where is the rule of gamesmanship? Where is the course in gamesmanship that people are taught? We're taught rules. We're taught fair play. We're taught what's right. I'm saying he said there was no gamesmanship. There was gamesmanship here. They waited until the last moment to change their opinions, and the court could have reconciled those opinions by giving the plaintiff the opportunity to rebut the evidence at the trial. I asked for that opportunity, and he denied it. We're going to give you an opportunity to rebut counsel's argument. We need to hear from counsel. It does seem a little strange that the attorney that retains an expert would decide that a deposition was an order of that expert when it's his own expert. Certainly you don't see it done often. There was reference to gamesmanship. Is that evidence of it? No. I believe, in fact, counsel just read the transcript. It said there wasn't evidence of it in this case. What explanation do you have for the deposition to expand on the disclosure of the expert's opinions? Let me just go to the 213 issue. Neither at the time of trial, nor in post-trial motion, nor in this court, has ever alleged that there was a 213 violation in relation to the initial disclosures. Because plaintiffs inspect their disclosures and the depositions of plaintiffs' experts went later than the court's schedule. Everyone was doing their best to comply with those schedules. That wasn't an issue in this case. Defendants did disclose, on December 18th, the written interrogatory answer to 213. Trial counsel for defendant went into court on a motion to continue the trial with the specific intent of saying, Judge, because of where we are with discovery and the trial date you set, let's give him more time so he can depose my experts. And at that time, plaintiff's counsel made his own strategic decision, which he's entitled to do, that he did not want to take the discovery depositions of those experts. And that's where, in most of these cases, we just don't see that. Usually that opportunity is taken advantage of. Given that, and given the strict rules of Rule 213 under Sullivan, and the burden that's placed on the party presenting the expert, defense counsel decided, I'm going to present my experts so that I know all of their opinions, all of the explanations, bases are there for us to show the court if there is, at the time of trial, a 213 objection. With regard to notice, the notices for the depositions of both Dr. Brent and Dr. Harris, defendant's experts, were sent out two weeks prior to the deposition. So certainly there was sufficient notice given for schedules. In fact, on the day of the first deposition, plaintiff's counsel did the emergency motion. He did appear in court immediately before the deposition and simply chose not to show at the discovery deposition. The next one, it was Dr. Harris. That was the following day. He did show up. Interestingly, however, counsel asked no questions during his cross-examination on the issue of orthostatic hypotension, the precise issue that we're dealing with here. Certainly he had an opportunity to inquire and to cross at that time. I'd also point out to the court, as counsel just advised you, he knew what they were going to say. This is certainly not an issue of 213 where there was surprise testimony given at the time. As you stated, Rule 213G provides that opinions can be disclosed in the discovery deposition. Plaintiff has conceded, page 7 of his brief, that both Dr. Harris and Dr. Brint testified at trial consistent with their discovery deposition. So there is no issue of a new opinion coming out at the time of trial. On the issue of, just because I feel I have to address it, plaintiff has not filed a reply in this appeal. You've addressed the issue of forfeiture. We stand on those issues, that the issues have been forfeited, both by failure to file the report of proceedings and failure to object to the testimony at the time. Why shouldn't the plaintiff's experts been allowed to sort of respond to the experts that you had regarding that single pay? I think it was orthostatic hypertension. Orthostatic, yes. In a rebuttal to address their explanation or to undermine their explanation. Dr. Margulies, the subject of this appeal is geared towards the neurologist, Dr. Margulies, that those, his opinions, and it was six days prior to trial, it was a two-page supplemental report filed by the plaintiff. But he wasn't intending to assert that in his case in chief. He was intending to use it as rebuttal. At the time of the trial, if you read the reports of proceedings, the argument of rebuttal was not raised at that time. It was simply raised as supplemental opinions. On appeal, the issue of rebuttal has come up, and he does cite the case law in support of a rebuttal opinion. So I will address both. Insofar as supplemental, well, certainly these were not supplemental to previously disclosed opinions. In fact, Dr. Margulies testified in his deposition that he was never asked to consider or to determine what caused the plaintiff's fault. It simply was, and I think the words he used was, it just didn't occur to me. I wasn't asked to do that. And that was one of the things the trial court considered in saying, well, certainly this isn't supplementing. These are just new opinions. They also weren't related to orthostatic hypotension. The type of supplemental opinions, if you will, that were offered had to do with the plaintiff pushing while he was on the toilet, micturation syncope happens with urination, that plaintiff's anxiety, his memory loss, and that he now had a severe head injury. These were all things completely new and completely unrelated to the orthostatic hypotension. Indulging the court, even if this were offered as rebuttal testimony in response to defendants' experts, I submit that it certainly doesn't fit the definition of rebuttal in that a review of Dr. Margulies' report doesn't even mention orthostatic hypotension. It doesn't state, well, certainly the plaintiff didn't suffer orthostatic hypotension for these reasons. So that is our position on that. It is also our position the plaintiff has forfeited this issue as well, a failure to cite or failure to file the reports of proceedings or to cite to the precise testimony or an offer of proof that was made. And as you know, both issues here are abuse of discretion standards, and it was incumbent for the court to be able to review the reasoning. The defendant did supply this court with the reports of proceedings, so that could be done. Unless the court has any further questions, we can stand on our brief. All right. Thank you. All right, thank you. Mr. Holstein, very briefly. Your Honor, I want to make it very clear that I did not say here that I knew what they were going to testify to at their depositions. I did know very shortly, within days, of what they did. I mean, what the first one testified to, and then I went to the second one, and I know what he was going to differ. He testified exactly the same way. So once the depositions were taken, and I can't stop them, even if I had been there, what difference would it have made? It's not the issue. It's the question of what relief I was able to obtain from the court, given the fact that this was such a very serious violation of the 60-day rule. No question that they could expand it. Mr. Holstein, you knew that it was a violation of the 60-day rule when you appeared before the trial judge. That's right. And the opportunity for a continuance came to you, and you declined it. So the violation itself cannot stand as a basis to reverse when you certainly accepted it. I understand, and I'm not arguing that. I agree with you. But I should have the opportunity to meet a new opinion that comes in. I didn't know that they were going to do that until they did it at their deposition. Thereafter, I went and spoke to the neurologist, his very expert neurologist, and I showed him medical records of his prior condition with his extremities, and he said, well, of course I can offer and demonstrate how orthostatic syncope in this case would only at most have aggravated his preexisting lack of oxygen in that brain that caused him to be dizzy when the doctor supported him in going to the bathroom. I have a problem with this entire case, Mr. Holstein. What was the doctor to do? The doctor says, you're now sitting up. I want you to sit here for five minutes. The patient says, no, I've got to go to the bathroom. The doctor, in an exercise of extra caution, says, okay, well, I'm going to accompany you to the bathroom, accompanies him to the bathroom, has him sit there. Do you want him to stand there in the bathroom with him to make sure that nothing happens? I mean, he closed the door, gives him some privacy, and the accident happens. So I don't understand where the real problem was. The real problem was that if he had known about the man's history, he had been treating this man for... He would have denied the man the permission to go to the bathroom? He would have maybe had him go to the bathroom, but he would have had somebody there. The fact of the matter is that this doctor never did any questioning of my client to ask him if he had any difficulty with any of his vascular systems. He didn't, and it was right at his same hospital. It was across the street, Broadway and Forton. Mr. Holstein, I want to ask you to wrap up, please. Judge, I think this is an opportunity to make a pronouncement as to this gamesmanship. I tell you, Your Honors, it's rampant. We don't get notices of motions. There are all kinds of things that are occurring, and it's becoming so contentious. Defense firms contending for their business. Gamesmanship has no place. It just doesn't have a place in the law. And it's like, where are you going to draw the line? What gamesmanship is allowed and what gamesmanship isn't? It should not be allowed. All right. Well, thank you very much, Mr. Holstein. We'll review the post-trial transcript as well. The case will be taken under advisement.